*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
CANDY KURY, on behalf of herself and all :
others similarly situated,              :   Civil Action No. 11-803 (FLW)
                                        :
                    Plaintiff,          :
                                        :      **OPINION**
        vs.                             :
                                        :
                                        :
ABBOTT LABORATORIES, INC. d/b/a         :
ABBOTT SALES, MARKETING and             :
DISTRIBUTION CO., et al.,               :
                                        :
                    Defendants.         :
_____  :

**WOLFSON, United States District Judge:**

Numerous class action suits have been filed around the country against defendants, Abbott Laboratories, Inc. d/b/a Abbott Sales, Marketing and Distribution Co. and Abbott Laboratories d/b/a Abbott nutrition (collectively, "Defendants"), relating to Defendants' September 2010 recall of certain Similac-brand infant formula products. The recall was precipitated by Defendants' discovery of common warehouse beetles or beetle larvae in certain Similac powder formulas. In this case, Plaintiff Candy Kury ("Plaintiff"), a New Jersey resident, asserts claims involving fraud, product liability and unjust enrichment against Defendants based upon allegations that these infant formulas caused substantial harm. In addition, Plaintiff seeks to represent a class comprised of all New Jersey citizens who purchased Similac products during an unspecified class period. In response to these allegations, Defendants, in the instant matter, move to dismiss the Complaint in its entirety

1

for failure to state a claim. For the reasons set forth herein, Plaintiffs' Complaint is dismissed; in particular, Plaintiff's claims pursuant to the New Jersey Consumer Fraud Act, breach of implied warranty, fraudulent concealment and unjust enrichment are dismissed with prejudice. Plaintiff's claim pursuant to the New Jersey Products Liability Act and breach of express warranty are dismissed without prejudice. In that regard, Plaintiff has leave to amend the Complaint with respect to those claims dismissed without prejudice within fifteen days from the date of the Order accompanying this Opinion.

## BACKGROUND

On a motion to dismiss, the Court reviews the Complaint by taking its allegations as true. Defendants manufacture, market, advertise, sell and distribute Similac brand infant formula products[1], a leading brand "sold in grocery stores and pharmacies throughout the United States, including in New Jersey." Compl., ¶¶ 25, 26. According to Plaintiff, Defendants specifically and extensively market Similac products to parents as a product that "moms can count on for trusted nutrition and the formula that's right for their babies." Id. at ¶ 27. In that connection, the packaging of Similac products promotes uses such as building "immune support," "strong bones," and "brain and eyes." Id. at ¶ 28. In addition, Defendants' marketing materials claim that "[e]ach of the formulas in [the Similac] line provides the balance of protein, minerals, and other nutrients that helps give babies a strong start in life. A baby's first year is so important, so count on Similac for nutrition you can trust." Id.

In and around September 2010, during an internal quality review, Defendants

---

[1] According to Defendants, the Similac line consists of at least ten different products, each available in a variety of sizes.

discovered that pieces of common warehouse beetles or beetle larvae were present in certain finished Similac products, which were manufactured in a single facility. Id. at ¶¶ 30-31. Thereafter, Defendants announced a voluntary recall of those products. In that particular announcement, Defendants advised the public that "the United States Food and Drug Administration ("FDA") has determined that while the formula containing these beetles poses no immediate health risk, there is a possibility that infants who consume formula containing the beetles or their larvae could experience symptoms of gastrointestinal discomfort and refusal to eat as a result of small insect parts irritating the GI tract." Compl., ¶ 31. Defendants' recall encompassed all Similac powdered formula sold in rectangular tubs, including certain Similac powder product lines offered in plastic containers, and certain Similac powder product lines offered in sizes such as 8-ounce, 12.4-ounce and 12.9-ounce cans. Id. at ¶ 34.

Plaintiff alleges that at an unspecified point in time, she purchased one or more unspecified Similac-brand products. Id. at ¶¶ 7, 39-40. Plaintiff further alleges that in purchasing the products, she "relied upon the misrepresentations made by Defendants about the quality and safety of Similac products, and that Similac products would not adversely affect her infant child's health." Id. at ¶ 39. Moreover, Plaintiff complains that Defendants "should have known that the failure to exercise proper safety standards and equipment management would have led to insects infiltrating Similac products, thereby creating formulas unsafe for infant consumption." Id. at ¶ 45.

Based upon these allegations, Plaintiff, in her Complaint, asserts five causes of action arising out of statutory violations and common law: (1) New Jersey's Consumer Fraud Act ("NJCFA"); (2) New Jersey Products Liability Act ("NJPLA"); (3) Breach of Express and

3

Implied Warranty; (4) Fraudulent Concealment; and (5) Unjust Enrichment. Because of these violations, Plaintiff claims that she suffered injury in fact, a loss of money or property, the personal expenditure of time and resources and/or other forms of injury, damage, mental anguish, and/or physical pain and suffering. See Compl., ¶¶ 54, 64, 71.

## DISCUSSION

### I.  Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46(1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d

at 234 (quoting Twombly, 550 U.S. at 555).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court has further explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948-49, 173 L. Ed. 2d 868 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of plaintiff's claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 2010 WL 4840093, at *8 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." 627 F.3d 85, Id. at *7 (quoting Ashcroft, 129 S.Ct. at 1953).

5

**II.     PLA: Subsumption**

At the outset, before the Court reviews the sufficiency of the allegations, it first resolves a legal question: whether Plaintiff's assertion of her NJFLA claim effectively subsumes Plaintiff's other claims under the NJCFA, breach of implied warranty, fraudulent concealment and unjust enrichment. The Court answers in the affirmative.

The New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, et seq., was enacted "to limit the expansion of products-liability law" and "to limit the liability of manufacturers so as to balance[] the interests of the public and the individual with a view towards economic reality." Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 47 (1996)(quotations and citations omitted). The NJPLA, therefore, "established the sole method to prosecute a product liability action[,]" and after its enactment, "only a single product liability action remains." Tirrell v. Navistar Int'l, Inc., 248 N.J. Super. 390, 398-99 (App. Div.), certif. denied, 126 N.J. 390 (1991). In that regard, the Third Circuit has long ago proclaimed that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991). Indeed, "the NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." Id.; see In re Lead Paint Litig., 191 N.J. 405, 436 (2007)(the NJPLA accomplishes its liability-limiting function by creating "one unified, statutorily defined theory of recovery for harm caused by a product.").

Generally, the NJPLA "encompass[es] virtually all possible causes of action relating to harms caused by consumer and other products," In re Lead Paint, 191 N.J. at 436-37, "except . . . breach of an express warranty." N.J.S.A. 2A:58C-1b(3). Because of the breadth

of the NJPLA, there is no question that New Jersey federal and state courts have consistently dismissed product liability claims based on common-law theories when the heart of those theories is the potential "harm caused by a product." See, e.g., Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 313 (3d Cir. 1999) (dismissing negligence claim, stating that "under New Jersey law negligence is no longer viable as a separate claim for harm caused by a product"); Thomas v. Ford Motor Co., 70 F. Supp. 2d 521, 528-29 (D.N.J. 1999) (dismissing common-law claim for negligent manufacture); Reiff v. Convergent Techs., 957 F. Supp. 573, 583 (D.N.J. 1997) (dismissing negligence and breach of warranty claims); McWilliams v. Yamaha Motor Corp. USA, 780 F. Supp. 251, 262 (D.N.J. 1991) (dismissing claims of negligence and breach of implied warranty), aff'd in part, rev'd in part on other grounds, 987 F.2d 200 (3d Cir. 1993); Green v. Gen. Motors Corp., 310 N.J. Super. 507, 517 (App. Div. 1998) (stating that "causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action" under the NJPLA).

Moreover, courts have also found that the NJPLA subsumes common law and statutory fraud claims so long as the harm alleged was caused by a product. See Brown v. Philip Morris, Inc., 228 F. Supp. 2d 506, 517 (D.N.J. 2002)(fraud claim preempted by the NJPLA when defendant's alleged misrepresentations resulted in "harm caused by a product"); Sinclair, 195 N.J. at 66 (statutory consumer fraud claim subsumed by the NJPLA when the "[t]he heart of plaintiff's case [was] the potential harm caused by Merk's drug"); McDarby v. Merck & Co., 401 N.J. Super. 10, 95-96 (App. Div. 2008)(statutory consumer fraud claim subsumed by the NJPLA because "the gravamen of [the] claim was that Merk marketed Vioxx fully aware of its cardiovascular risk [and] made misrepresentations[] and

7

. . . omis[ssions]" in connection with its marketing). Indeed, this Court has previously, in Lopienski v. Centocor, Inc., No. 07-4519, 2008 WL 2565065, at *1 n.2 (D.N.J. Jun. 25, 2008), found that claims of negligence, breach of implied warranty, negligent and fraudulent misrepresentation, statutory consumer fraud and fraudulent concealment are subsumed by the NJPLA when the theory of a case is premised upon product liability.

Here, there is no doubt that Plaintiff's case is based on a product liability theory. In fact, in the first paragraph of the Complaint, Plaintiff characterizes this case as involving Defendants' manufacturing and selling of various defective Similac brand infant powder formulas. Compl., ¶ 1. Simply, the heart of Plaintiff's complaints is that her or her child's injuries – economic and non-economic alike – resulted from ingesting the allegedly defective Similac products that Defendants marketed and sold. Plaintiff, however, aruges that the causes of action, not involving the NJPLA or express warranty, are not subsumed by the NJPLA because in addition to "the type of damages [recoverable] under the [NJPLA]," such as personal injuries and emotional distress, "she is also seeking damages for the loss of the product itself," which are "specifically excluded [from recovery under] the [NJPLA]." Plaintiff's Opp. at p.11. Significantly, Plaintiff implicitly acknowledges that each of her claims, which are not brought pursuant to the NJPLA or the breach of express warranty, are barred by the NJPLA, except to the extent those claims seek the lost value of the product itself.

Nevertheless, even the claim of lost value in this case is not sufficiently distinguishable from the broad harm encompassed by the NJPLA. As the court has explained in Felluer v. Tri-Union Seafoods, LLC, No. 06-0688, 2010 U.S. Dist. LEXIS 36195, at *15 (D.N.J. Apr. 13, 2010), "[t]he fact that [a plaintiff] . . . seeks economic

damages to reimburse her for the cost of the product (in addition to personal injury damages) does not change the fact that this is, in essence, a product liabilities claim." The court, deriving its reasoning from the New Jersey appellate division decision in McDarby, went on to hold that because the NJPLA's definition of harm covers virtually any economic harm caused by the allegedly defective product, a plaintiff should not be permitted to bring separate claims under the NJPLA and NJCFA "as the [NJPLA] was intended to unify product liabilities causes of action into a single claim." Id. at *15-16 (citing McDarby, 401 N.J. Super at 277-78). Moreover, a plaintiff should not be able to benefit from provisions – providing treble damages and attorney's fees – contained in the NJCFA despite the fact that such provisions were intentionally excluded from the NJPLA. See McDarby, 401 N.J. Super at 278. Indeed, this line of reasoning has been adopted by courts in this district. See Arlandson v. Hartz Mountain Corp., No. 10-1050, 2011 WL 2112494, at *11 (D.N.J. May 25, 2011)(dismissing claim for unjust enrichment where the complaint's "core issue" was the harmfulness of the defendant's product); O'Donnell v. Kraft Foods, Inc., No. 09-4448, 2010 WL 1050139, at *3 (D.N.J. Mar. 18, 2010)(plaintiffs' claim of lost value from purchasing the hot dogs was preempted by NJPLA, because those products' lost value resulted from "the increased risk of cancer [plaintiffs] allege[d] arises from consumption of [the] product . . ."); Levinson v. Johnson & Johnson Consumer Cos., 2010 U.S. Dist. LEXIS 8654 (D.N.J. Feb. 1, 2010); Smith v. Merial Ltd., No. 10-439, 2011 U.S. Dist. LEXIS 56461, at *11-13 (D.N.J. May 26, 2011) ("Plaintiffs attempt to classify their claims as non-product liability claims by alleging only economic damages related to the price of the product as opposed to damages related to the harm caused by the product. However, limiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA."

(citations and quotations omitted)).

Accordingly, based on the allegations here, any economic loss or non-economic loss - including the cost of purchasing the Similac products - Plaintiff allegedly suffered, resulted from her infant ingesting the powder formulas, which arises solely under product liability. See Smith, 2011 U.S. Dist. LEXIS 56461 at *13 ("Though Plaintiffs assert contract, quasi-contract, and consumer fraud claims, the core issue underlying Plaintiffs' claims is that the chemicals in Frontline products are dangerous and caused physical damage to Plaintiffs' property, in the form of harm to their pets' health."). This type of harm falls squarely within the exclusive purview of the NJPLA and as such, Plaintiff's claims pursuant to the NJCFA, breach of implied warranty, fraudulent concealment and unjust enrichment are subsumed by the NJPLA.[2] Plaintiff's proper recourse is through the NJPLA and/or breach of express warranty, as explained below.

---

[2]Plaintiff relies on Shannon v. Howmedica Osteonics Corp., No. 09-4171, 2010 U.S. Dist. LEXIS 8621, at *7 (D.N.J. Feb. 1, 2010), for the proposition that her claims based upon the lost value of the Similac products are separate and distinct from her NJPLA claim. The Court does not find the analysis of that case persuasive as the Shannon court provided little reasoning for its holding. Plaintiff does not advance any other authorities to support her position. Nonetheless, even if lost value is an exception to NJPLA's purview, Plaintiff's claims relating to the loss value of the products may also be dismissed on the ground that Plaintiff was offered a refund for the recalled products. Indeed, Defendants announced in a public notice that they would provide a refund to any purchaser of Similac products that were the subject of the recall. While Plaintiff does not allege in the Complaint that she has received a refund, the mere tender of relief moots her claim for the purchase price of the Similac products. See Gates v. City of Chicago, 623 F.3d 389, 413 (7th Cir. 2010); see, e.g., Brown v. Abbott Labs., Inc., No. 10-6674, 2011 U.S. Dist. LEXIS 110175, at *15-16 (N.D. Ill. Sep. 27, 2011); Jovine v. Abbott Labs., Inc., 795 F. Supp. 2d 1331 (S.D. Fla. 2011); Tosh-Surryhne v. Abbott Labs. Inc., No. 10-2603, 2011 U.S. Dist. LEXIS 110107, at *10-11 (E.D. Cal. Sept. 26, 2011); Jasper v. Abbott Labs., Inc., No. 11-229, 2011 U.S. Dist. LEXIS 73806, at *18-19 (N.D. Ill. Jul. 8, 2011); Bland v. Abbott Labs., No. 11-430, 2012 U.S. Dist. LEXIS 1732, at *6 (W.D. Ky. Jan. 6, 2012).

**III.     New Jersey's Products Liability Act**

To properly plead a cause of action under the NJPLA, a plaintiff must allege that the defendant manufactured the product, that a reasonably foreseeable user was injured, that the product was defective, that the defect existed when it left the defendant's control, and that the defect was the factual and proximate cause of the plaintiff's injury. Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. 84, 97 (1999); Coffman v. Keene Corp., 133 N.J. 581, 593 (1993); Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982).  Importantly, the New Jersey Supreme Court has advised that the NJPLA requires a physical injury. Sinclair, 195 N.J. at 64 (under the NJPLA, "the word 'injury' is surrounded by 'physical illness,' which explicitly requires something physical, and 'death,' which inherently is physical.").

In this case, Defendants challenge the sufficiency of Plaintiff's NJPLA claim based on Plaintiff's failure to plead any physical injury.  The Court agrees; nothing in the allegations contained in the Complaint sets forth any physical injuries to Plaintiff or Plaintiff's infant child, who is not a party in this case.[3]  Other than conclusory and vague allegations that Plaintiff suffered damages, mental anguish and pain and suffering, the extent of any physical damages suffered by Plaintiff or Plaintiff's infant child are contained

---

[3] Having reviewed Plaintiff's Complaint, the Court finds that there are no allegations that the Similac products Plaintiff purchased were subject to the September 2010 recall.  As Plaintiff avers in her Complaint that only certain types of Similac products were recalled, Plaintiff fails to identify that the products she purchased were subject to the recall.  Rather, Plaintiff merely alleges that "Defendants misled Plaintiff into purchasing the unsafe Similac products," see Compl., ¶ 39, and that "Plaintiff and the members of the putative Classes would not have purchased the recalled Similac products had they known of their defective condition."  These bare allegations are insufficient under the Iqbal standard. Indeed, Plaintiff recognizes this deficiency and requests that "if given the opportunity to amend the Complaint, Plaintiff would be able to show that she purchased products that should have been recalled . . . ." Plaintiff's Opp., pp. 8-9.

11

in these allegations: "Defendants discovered that Similac-brand formulas had been contaminated and contained beetles and beetle larvae, which if consumed by infant children, <u>could</u> lead to serious health concerns, including gastrointestinal problems, diarrhea and the like." Compl., ¶ 1 (emphasis added).  In that connection, Plaintiff alleges that "Defendants caused serious injury to Plaintiff and the putative Classes she seeks to represent." <u>Id.</u> at ¶ 3.  These are clearly insufficient under the <u>Iqbal</u> standard to allege a physical injury, and as a result, Plaintiff's NJPLA claim is dismissed.[4]

## IV. Breach of Express Warranty

An express warranty claim is codified under N.J.S.A. 12A:2-313, which provides:

(1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

N.J.S.A. 12A:2-313; <u>Gupta v. Asha Enters., L.L.C.</u>, 422 N.J. Super. 136, 153 (App. Div. 2011).

---

[4] As a final note, Defendants ask the Court dismiss the Complaint in its entirety because Plaintiff's allegations of injury do not suggest that Plaintiff suffered any injury. However, because the Court has already dismissed Plaintiff's claims on various grounds set forth above, it need not consider this question in connection with the other causes of action.

12

Here, Defendants argue that the Court should dismiss this claim for three reasons: (1) Plaintiff fails to allege that there was anything wrong with any unit of Similac she purchased; (2) all of Defendants' statements that Plaintiff pleads are actionable are either not actually alleged to be false or mere puffery; and (3) Plaintiff fails to plead that she provided the requisite pre-litigation notice of breach.  Dispositive of the claim for breach of express warranty is Plaintiff's failure to provide a pre-litigation notice to Defendants regarding the alleged breach.

New Jersey has adopted the Uniform Commercial Code's ("UCC") notice requirement for an express warranty claim.  Luppino v. Mercedes-Benz USA, LLC, No. 09-5582, 2011 U.S. Dist. LEXIS 65495, at *7 (D.N.J. Jun. 20, 2011); Joc, Inc. v. Exxonmobil Oil Corp., No. 08-5344, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010); Slack v. Suburban Propane Partners, L.P., No. 10-2548, 2010 WL 5392845, at *4-5 (D.N.J. Dec. 22, 2010). It provides: "Where a tender has been accepted . . . the buyer must within a reasonable time after [s]he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  N.J.S.A. 12A:2-607(3)(a).  Based upon the language, this statutory notice is a "condition precedent to filing any suit for breach of warranty." Joc, 2010 WL 1380750 at *4.

There is no dispute that Plaintiff has failed to plead that she provided the pre-litigation notice of breach.  Indeed, Plaintiff has not disputed this fact in her opposition. More importantly, Plaintiff offers no excuse or explanation for her failure to do so. Accordingly, because Plaintiff has failed to allege that the condition precedent has been met – sending a pre-litigation notice – Plaintiff's express warranty claim necessarily fails.  See Luppino, 2011 U.S. Dist. LEXIS 65495 at *7 ("At no time has any court in this district or in

13

the state of New Jersey found that a buyer is not required to provide a direct seller with pre-suit notice in an action for express breach of warranty. Thus, Stern and Casiero's admission that they have failed to provide notice to Defendant proves fatal to their breach of express warranty claims."). However, since the Court cannot determine whether Plaintiff in fact sent a notice to Defendants, or whether Plaintiff is excused from sending a notice, this claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss. In sum, Plaintiff's claims pursuant to the NJCFA, breach of implied warranty, fraudulent concealment and unjust enrichment are dismissed as they are subsumed by NJPLA. Plaintiff's claim pursuant to the NJPLA and breach of express warranty are dismissed without prejudice. In that regard, Plaintiff has leave to amend the Complaint with respect to those claims dismissed without prejudice within fifteen days from the date of the Order accompanying this Opinion.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: January 17, 2012